UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | 1:11-cr-00231-JMS-KPF-01 |
| | ) | |
| MARLON MARRERO, | ) | |
| *Defendant.* | ) | |

### ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Presently pending before the Court is Defendant Marlon Marrero's Motion to Suppress. [Dkt. 32.] Mr. Marrero challenges a search of his hotel room and subsequent seizure of firearms found under a mattress. The Court held a hearing on Mr. Marerro's motion on April 4, 2012. For the following reasons, the Court **DENIES** Mr. Marrero's motion.

### I.
### FACTS[1]

Mr. Marrero rented a hotel room on the northwest side of Indianapolis the night of February 24, 2011. Mr. Marrero's girlfriend, Gabrielle Barker, and her young son also spent the night in the hotel room with Mr. Marrero.

Mr. Marrero was wanted on two outstanding warrants issued by a judge of the Marion Superior Court stemming from charges of dealing in cocaine, a class A felony, and burglary, a class B felony. During the early morning hours of February 25, 2011, after being alerted by hotel personnel that Mr Marrero was present, Indianapolis Metropolitan Police Department ("IMPD") officers, accompanied by Indianapolis FBI Safe Streets Task Force officers, went to the hotel to execute the outstanding warrants.

---

[1] The parties agree on a majority of the material facts surrounding the search. The Court will note the material facts that the parties dispute. Any finding of fact more properly characterized as a conclusion of law is so adopted, and vice versa.

At approximately 4:30 a.m., officers positioned themselves outside of Mr. Marrero's hotel room, and Task Force Officer Michael Hubbs placed a telephone call to advise Mr. Marrero that he had outstanding arrest warrants and to ask Mr. Marrero to exit the room with his hands up. Mr. Marrero exited the room and was taken into custody just outside the hotel room.

The parties dispute whether Mr. Marrero closed the door behind him as he exited the hotel room or whether he left the door open. The Government contends that Mr. Marrero left the door open, which allowed the officers to see that other people were inside the room. Mr. Marrero testified that he closed the door behind him. Ms. Barker testified that Mr. Marrero closed the door behind him but that she cracked open the door to see what was going on.

The parties agree that Mr. Marrero ended up back inside the hotel room but dispute how that happened. The Government contends that after he was placed in handcuffs, Mr. Marrero complained that he was cold and then was escorted back into the hotel room so that he could get a jacket. Mr. Marrero testified that he was wearing a jacket when he exited the hotel room and that the officers pushed him back into the room after placing him in handcuffs. When asked how the door got open after he closed it, Mr. Marrero testified that he did not know.

Once inside the room, officers confirmed that Ms. Barker and her son were the only occupants. IMPD Detective Nicholas Stewart asked Mr. Marrero if there were any weapons, drugs, or anything else in the room that would pose a threat to the officers. The parties dispute Mr. Marrero's response to that question. Mr. Marrero says that he lowered his head and did not answer Detective Stewart's question, while the Government contends that Mr. Marrero told Detective Stewart that there were two guns underneath the mattress farthest from the door where he and Ms. Barker had been sleeping. Officers recovered two loaded guns from underneath that

mattress, one of which had an obliterated serial number. Ms. Barker testified that the officers were talking to Mr. Marrero in a conversation she could or did not fully hear.

Mr. Marrero was charged with possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

## II.
### FOURTH AMENDMENT

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. Generally, a warrantless search or seizure in the absence of probable cause is unreasonable. *United States v. Slone*, 636 F.3d 845, 848-849 (7th Cir. 2011). When police conduct an unreasonable search or seizure, the exclusionary rule usually vindicates the Fourth Amendment's protections by keeping out the unlawfully obtained evidence. *Id.*

## III.
### CONTINUED EXPECTATION OF PRIVACY AFTER ARREST WARRANT

The Government argues that Mr. Marrero had no reasonable expectation of privacy once the arrest warrant was issued; consequently, he lacks standing to challenge the officers' entry into the hotel room. The Government cites *United States v. Jackson* to support its argument. 576 F.3d 465, 468 n.1 (7th Cir. 2009) ("Because a suspect has no reasonable expectation of privacy once an arrest warrant is issued, it is at least arguable that Jackson would not have standing to challenge an illegal entry into [the] home."). *Jackson* concludes that the prevailing view in circuits that have addressed the issue is that a defendant "retains a sufficient expectation of privacy to challenge a search where the police lack a reasonable belief that the person to be arrested may be found in the place to be searched." *Id.* (citing cases from other circuits).

The Government argues that it had a reasonable belief that Mr. Marrero was in the hotel room because hotel staff confirmed Mr. Marrero's presence and Mr. Marrero answered the phone when Officer Hubbs called. Therefore, the Government argues that pursuant to *Jackson*, Mr. Marrero lacks standing to challenge the search of the hotel room because the officers had an arrest warrant.

As a general matter, the Court agrees with the Government's proposition that, in light of the arrest warrant and the officers' reasonable belief that Mr. Marrero was inside the hotel room, Mr. Marrero would lack standing to challenge the officers' entry into the hotel room to execute the warrant. But that is not what happened. Instead, the parties agree that Officer Hubbs asked Mr. Marrero to exit the hotel room and that Mr. Marrero was arrested *outside* the hotel room after complying with Officer Hubbs' request. *Jackson* and the cases cited therein do not discuss whether a defendant has standing to challenge a search that occurs *inside* a residence after an arrest warrant is executed *outside* the residence. Instead, those cases concern a defendant's authority to challenge an officer's entry "into" a residence to execute an arrest warrant "within" the residence. *See Jackson*, 576 F.3d at 468 (discussing standing to challenge "entry into" the home of a third-party to execute arrest warrant); *United States v. Boyd*, 180 F.3d 967, 977 (8th Cir. 1999) (officers had reasonable belief that defendant was inside residence to "enter the home" to execute warrant); *Valdez v. McPheters*, 172 F.3d 1220, 1225-26 (10th Cir. 1999) (holding that the officer possessing the arrest warrant had authority to enter residence if there was a reasonable basis to believe defendant both lived in the residence and "could be found within at the time of entry").

The Court presumes that the Government cited the most favorable cases to support its argument. Because the facts of those cases concerning the location of the arrest are materially

different than the facts of this case, the Court does not find the Government's standing argument persuasive and declines to find that Mr. Marrero did not have a reasonable expectation of privacy inside the hotel room after he was taken into custody outside the hotel room.

## IV.
### VALIDITY OF PROTECTIVE SWEEP

As detailed above, the parties disagree whether or not Mr. Marrero closed the door when he exited the hotel room, and they also disagree how Mr. Marrero ended up inside the hotel room after he was taken into custody outside the room. The Court concludes that these distinctions are immaterial to the validity of the search.

Ms. Barker testified that Mr. Marrero closed the hotel room door behind him when he went into the hall, but she admitted that she subsequently cracked open the door to see what was going on outside. Therefore, regardless of whether the Court credits the testimony of the officers that the door remained open or whether it credits Mr. Marrero's testimony that he closed the door behind him,[2] Ms. Barker's testimony that she opened the door to see what was going on made reasonable the officers' belief that a protective sweep of the hotel room was necessary. *See Maryland v. Buie*, 494 U.S. 325, 337 (1990) (holding that after conducting an arrest, officers may perform a limited, protective sweep if they possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"). In other words, it was reasonable for the officers to believe that a person peeping from the cracked open door of the room where Mr. Marrero had just exited posed a danger to those on the arrest scene, justifying a protective sweep of the hotel room. Likewise, because the officers conducted a lawful protective sweep, it is immaterial whether Mr. Marrero

---

[2] Again, Mr. Marrero testified that he did not know how the door opened after he closed it.

requested to go back inside the room because he was cold or whether the officers entered the room after seeing Ms. Barker peeping through the open door.

## V.
### LOCATING WEAPONS

Once inside the hotel room, the parties agree that Mr. Marrero was placed in a chair by the door and immediately asked whether any weapons were inside the hotel room. To the extent Mr. Marrero made a *Miranda* challenge in his reply brief, [dkt. 39 at 2-3], he conceded at the oral argument, and the Court agrees, that if the officers' initial entry into the hotel room was lawful, the officers were justified in asking him if there were weapons in the room and in seizing any weapons identified. *See United States v. Are*, 590 F.3d 499, 505 (7th Cir. 2009) (holding that under the public safety exception, police officers can ask questions without first giving *Miranda* warnings if they reasonably believe it to be necessary to secure their own safety or the safety of the public). Because Mr. Marrero had previously been arrested on weapons charges and the arrest warrant established that he was being arrested on drug trafficking charges, it was reasonable for Detective Stewart to question Mr. Marrero if any weapons were located in the hotel room. *Id.* at 506. The presence of Ms. Barker and her young son in the hotel room bolsters the conclusion that the question about weapons fell within the public safety exception to *Miranda*. *Id.*

The parties dispute Mr. Marrero's response to Detective Stewart's question about the presence of weapons. Detective Stewart testified that in response to the question, Mr. Marrero put his head down and told Detective Stewart that there were guns located underneath the mattress farthest from the door. Mr. Marrero testified that he did not respond to Detective Stewart's question. Ms. Barker testified that she did not hear Mr. Marrero respond but that it appeared to her that the officers went to the exact spot of the guns after the question.

The Court finds that Ms. Barker's testimony corroborates Detective Stewart's testimony that Mr. Marrero told Detective Stewart that there were guns located underneath the mattress farthest from the door. Specifically, Ms. Barker's observation that the officers immediately went to the mattress that the guns were located under supports Detective Stewart's testimony that Mr. Marrero told him where the guns were located.

Again, Mr. Marrero does not dispute that if the officers were lawfully present in the room, they could ask about the presence of weapons and, having found the guns, seize them. The Court has found that the officers lawfully entered the hotel room, thus their weapons inquiry was legitimate and the seizure likewise proper. For these reasons, the Court denies Mr. Marrero's motion to suppress.

## VI.
### CONCLUSION

The Court finds that the officers lawfully entered Mr. Marrero's hotel room and that Mr. Marrero subsequently told Detective Stewart that there were guns located underneath the mattress after a proper public safety weapons inquiry. Therefore, the Court **DENIES** Mr. Marrero's Motion to Suppress. [Dkt. 32.]

04/06/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Copies via ECF only:**

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

Matthew Rinka

UNITED STATES ATTORNEY'S OFFICE
matthew.rinka@usdoj.gov